## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WESTFIELD INSURANCE, *a/k/a*      )
WESTFIELD INSURANCE COMPANY,      )
*as subrogee of* THP ENTERTAINMENT, )
INC., *t/d/b/a* RELIENT K,          )
                                    )
         Plaintiff,                 )
                                    )   CIVIL ACTION NO. 3:10-cv-100
    v.                              )   JUDGE KIM R. GIBSON
                                    )
DETROIT DIESEL CORPORATION,        )
HONEYWELL INTERNATIONAL, INC.,     )
HONEYWELL TRANSPORTATION           )
SYSTEMS, *and* HONEYWELL TURBO     )
TECHNOLOGIES,                       )
                                    )
         Defendants.                )

## MEMORANDUM AND ORDER OF COURT

### I.    SYNOPSIS

This matter comes before the Court on the Motion for Summary Judgment (Doc. No. 26) filed by Defendants Detroit Diesel Corporation, Honeywell International, Inc., Honeywell Transportation Systems, and Honeywell Turbo Technologies (collectively, "Defendants"), which Plaintiff Westfield Insurance ("Plaintiff") opposes. For the reasons that follow, the Court will **GRANT** the motion.

### II.   JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper under 28 U.S.C. § 1391(b)(2).

### III.  BACKGROUND

This case stems from a tour bus fire which occurred while the band Relient K was traveling along the Pennsylvania Turnpike in the early hours of June 28, 2007. Relient K submitted claims for resultant property damage to Plaintiff insurer, who in turn filed suit in the

Court of Common Pleas of Somerset County as the band's subrogee. In its complaint, Plaintiff alleges that a defective engine and/or related turbocharger caused the fire and seeks recovery from Defendants—the designers, manufacturers, and distributors of the engine and its components—under theories of strict products liability, negligence, and breach of warranty. (See Doc. No. 1-1). Defendants removed the case to this Court on April 13, 2010, and discovery was thereafter conducted.

On September 30, 2011, Defendants filed the instant motion for summary judgment (Doc. No. 26). In support of the motion, Defendants contemporaneously filed their brief (Doc. No. 29) and concise statement of material facts ("CSMF") with appendix of supporting exhibits (Doc. No. 30) as required by the Local Rules of the United States District Court for the Western District of Pennsylvania (the "Local Rules"). Plaintiff filed a brief (Doc. No. 31) and exhibits (Doc. No. 33) in opposition to Defendant's motion, but failed to file a responsive CSMF as required by Local Rule 56.C.1. As a result of this failure, the facts contained in Defendants' CSMF are deemed admitted for summary judgment purposes pursuant to Local Rule 56.E.[1] Also, pursuant to Local Rule 56.C.1.c, the facts contained in Defendants' CSMF are the only material facts which are allegedly at issue and/or necessary for the Court's resolution of the instant summary judgment motion.[2] Thus, only the following undisputed facts guide this Court's decision.

---

[1] Local Rule 56.E provides in pertinent part that "[a]lleged material facts set forth in the moving party's [CSMF] . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted *by a separate [CSMF] of the opposing party*." LCvR 56.E (emphasis added); see also *Rozier v. United Metal Fabricators, Inc.*, No. 3:09-257, 2012 U.S. Dist. LEXIS 6200, *7 (W.D. Pa. Jan. 19, 2012) ("Courts in this district have strictly adhered to the summary judgment procedures set forth both by the Federal and Local Rules, and have consequently deemed inadequately controverted facts as admitted for purpose of summary judgment.") (collecting cases).

[2] Local Rule 56.C.1.c provides that a responsive CSMF shall "set forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment[.]" LCvR 56.C.1.c.

On June 28, 2007, Relient K was traveling west on the Pennsylvania Turnpike in a 2000 Prevost H3-45 VIP Entertainer Coach (the "bus"). (Doc. No. 30 at ¶¶ 1, 7-9). A fire broke out shortly after 3:00 a.m., but the bus driver was able to exit the roadway and evacuate to safety with all of the passengers. (*Id.* at ¶¶ 7, 10). Subsequently, Plaintiff filed suit to recover for property damage sustained during the blaze contending that a defective engine and/or turbocharger was the cause. (See *id.* at ¶ 11).

The bus was powered by a Detroit Diesel Series 60 engine equipped with a turbocharger manufactured by a subsidiary of Defendants. (*Id.* at ¶¶ 2-3). The original purchaser of the bus took delivery on March 2, 2001, and at the time of the fire, it was owned and operated by Four Seasons Leasing, Inc. and had 540,000 miles on the odometer. (*Id.* at ¶¶ 4-6).

To support its claim that the engine was defective, Plaintiff retained W.L. Davison, Jr. ("Davison") of W.L. Davison Forensic Services, Inc. as an expert consultant. (*Id.* at ¶ 16). Davison issued three reports regarding the cause of the fire. Davison's conclusions and all of the factual support he provides in these reports are detailed below.

Davison drafted his first report after "an initial and preliminary examination without the benefit of any removal of components or vehicle disassembly." (*Id.* at ¶ 17 and pg. 30). In the first report, Davison opines:

As a result of this initial and preliminary examination and a telephone interview with the operator of the vehicle, it appears at this time that the cause for this fire was a failed turbo charger. To substantiate this observation, further examination and disassembly will be required.

(*Id.* at ¶ 18 and pg. 30).

Davison issued a second report based on an examination and disassembly of the turbocharger and a portion of the exhaust system conducted at SEA Limited's laboratory on October 29, 2007. (*Id.* at ¶ 36). Davison's second report provides:

> The examination of the turbo charger and the portion of the exhaust system which had been retained further supported my initial and preliminary findings of a turbo charger failure being the cause of the fire.

(*Id.* at ¶ 37 and pg. 55).

Based on the above-referenced examinations, Davison issued a third and final report

stating:

> An examination of the turbo charger and the portion of the exhaust system which had been retained displayed punctures within the after turbo exhaust piping that protruded from the interior of the exhaust pipe through the exterior portion of the exhaust pipe. The examination of the impeller wheel for the turbo charger revealed excessive wear and a disintegrating impeller wheel. This disintegration to the impeller wheel was caused by excessive wear within the turbo charger.

> The deficiencies within the turbo charger can cause poor operating characteristics, overheating of the turbo charger and exhaust system, and escaping exhaust gases. All or a combination of these could be the cause of the fire.

(*Id.* at ¶¶ 55-56 and pg. 59).

In their summary judgment motion, Defendants contend that these reports—the only expert evidence regarding the cause of the fire—must be excluded as unreliable because Davison employed no identifiable methodology in reaching his conclusions. Alternatively, they argue that the reports are insufficient to establish a *prima facie* case of strict products liability, negligence, or breach of warranty under Pennsylvania law. These issues are now ripe for summary adjudication.

## IV.    LEGAL STANDARD

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007));

see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56 (a).[3] Issues of

fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v.

Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome

of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and

identifying those portions of the record which demonstrate the absence of a genuine issue of

material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing

summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but

"must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart

Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409

F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present

more than just bare assertions, conclusory allegations or suspicions to show the existence of a

genuine issue") (internal quotation marks omitted).

## V.    DISCUSSION

Defendants contend that the Court should grant summary judgment in their favor because

the testimony of Plaintiff's expert is inadmissible and/or inadequate to establish the *prima facie*

elements of Plaintiff's claims. Plaintiff disagrees. The Court will address these issues in turn.

---

[3] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" FED. R. CIV. P. 56 advisory committee's note, 2010 amend.

A.     **Necessity of Expert Testimony**

As a preliminary matter, this Court must determine whether expert testimony is necessary

for Plaintiff to establish its claims. The United States Court of Appeals for the Third Circuit has

explained that in general:

> expert evidence is not necessary . . . if all the primary facts can be accurately and
> intelligibly described to the jury, and if they, as [persons] of common
> understanding, are as capable of comprehending the primary facts and of drawing
> correct conclusions from them as are witnesses possessed of special or peculiar
> training of the subject under investigation.

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (quoting *Padillas v. Stork-Gamco,*

*Inc.*, 186 F.3d 412, 415-16 (3d Cir. 1999)). However, a corollary to this principle is the notion

that expert testimony *is* generally required in products liability cases where a defect is alleged,

unless the issues are "simple" and "within the range of comprehension of the average juror." See

*id.*; *McCracken v. Ford Motor Co.*, 392 F. App'x 1, 3 (3d Cir. 2010). Thus, courts routinely

require plaintiffs to support their claims with expert testimony when the subject matter is highly

technical and beyond the jury's understanding. See e.g., *Oddi*, 234 F.3d at 159 ("We do not

believe that a juror could look at the front bumper and the flooring of the cab of the truck

[plaintiff] was driving and reasonably conclude, not only that its design was defective, but also

that testing would have disclosed the defect and that it could have been remedied. Such

conclusions are within the peculiar competence of experts."); *McCracken*, 392 F. App'x at *3

(concluding that plaintiff was required to support his strict products liability and defective design

claim—that a car windshield failed to shield him from radiation—with expert testimony because

of the "highly technical nature of the subject matter"); *Marino v. Maytag Corp.*, No. 02-2085,

2005 U.S. Dist. LEXIS 22377, *12-13 (W.D. Pa. Sept. 29, 2005) (finding that expert testimony

was necessary because jurors could not understand mechanical drawings without the testimony,

listen to testimony regarding safety warnings generally, and reasonably conclude that a dishwasher's design was both defective and a substantial factor in causing plaintiff's injury).

Instantly, the Court finds that Plaintiff must support its claim—that a defective bus engine and/or component turbocharger caused the fire in question—with expert evidence. The inner workings of the engine and its components are highly technical in nature, and, therefore, "within the peculiar competence of experts." See *Oddi*, 234 F.3d at 159. Competent expert evidence is required because without it, the jury would be forced to impermissibly speculate about the cause of the fire. See *Marino*, 2005 U.S. Dist. LEXIS 22377 at *13. Absent proof of what caused the fire, Plaintiff cannot prevail on any of its theories of recovery, whether they sound in strict products liability, negligence, or breach of warranty.

As a result of this finding, the Court must enter summary judgment in Defendants' favor if Plaintiff does not present admissible expert evidence to establish its *prima facie* case, including the cause of the fire. See *Oddi*, 234 F.3d at 141-42 (affirming the district court's entry of summary judgment in defendant's favor where the testimony of plaintiff's expert was rightfully excluded and plaintiff could not establish his *prima facie* case of liability); *Scrofani v. Stihl Inc.*, 44 F. App'x 559, 561 (3d Cir. 2002) (same); FED. R. CIV. P. 56(c)(1)(B) (permitting a party contending that a fact cannot be genuinely disputed to support the assertion by showing that "an adverse party cannot produce admissible evidence to support the fact").

## B. Admissibility of Expert Testimony

Defendants claim that Davison's reports are inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), because they are unreliable. Specifically, Defendants contend that: (1) Davison does not set forth any methodology supporting his findings; and (2) such unsubstantiated conclusions are insufficient to survive

*Daubert* scrutiny. (See Doc. No. 29 at 17-19).[4] Plaintiff contends that "Davison's expert report is

legally sufficient and proper to support Plaintiff's claims," but offers no explanation of

Davison's methodology other than the statement that Davison "made an independent

examination of the equipment in question and rendered a thorough and in-depth written opinion

clearly stating the cause of the tour bus fire, and then signed that opinion." (See Doc. No. 31 at

8-9). The Court will discuss Rule 702 before addressing the inadequacies of Davison's reports.[5]

## 1.    Rule 702

Under Rule 702, "[a]n expert witness may be permitted to testify regarding 'scientific,

technical, or other specialized knowledge' if it 'will assist the trier of fact to understand the

evidence or to determine a fact in issue.'" *United States v. Walker*, 657 F.3d 160, 175 (3d Cir.

2011) (citing *United States v. Mornan*, 413 F.3d 372, 380 (3d Cir. 2005) (quoting Rule 702)).[6] In

---

[4] Defendants also claim that "Davison's expert opinions do not 'fit' because they are supported by no underlying methodology that can be applied [to] the facts of this case. As such, his opinions will not assist the trier of fact, and are therefore inadmissible." (Doc. No. 29 at 19). Although couched in different terminology, this argument is simply a reiteration of Defendants' claim that Davison's opinions are unreliable, and will be treated as such by the Court.

[5] It is within the discretion of a district court to determine whether a hearing is necessary to determine if a proffered expert's testimony satisfies Rule 702 and *Daubert*. *Padillas*, 186 F.3d at 417-18; *Murray v. Marina Dist. Dev. Co.*, 311 F. App'x 521, 523 (3d Cir. 2008). Here, the Court concludes that a hearing is not necessary as the factual record before the Court is adequate to evaluate Davison's methodology or lack thereof. Presently before the Court are three separate reports by Davison, as well as the parties' briefings specifically addressing the issue of Davison's methodology. Plaintiff did not request an evidentiary hearing or otherwise seek to supplement the record in response to Defendants' *Daubert* challenge. In sum, it is appropriate for this Court to evaluate Davison's methodology based on the record before it without first holding a hearing. See *Oddi*, 234 F.3d at 154 (quoting *In re TMI Litigation*, 199 F.3d 158, 159 (3d. Cir. 2000), for the proposition that a district court need not "provide a plaintiff with an open-ended and never-ending opportunity to meet a Daubert challenge until plaintiff 'gets it right'").

[6] Rule 702 provides in its entirety:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

order for an expert witness to be permitted to offer opinion testimony, these three requirements must also be satisfied: (1) his or her testimony must be "based upon sufficient facts or data"; (2) the testimony must be "the product of reliable principles and methods"; and (3) the witness must have "applied the principles and methods reliably to the facts of the case." *Id.* (quoting Rule 702); see also *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) ("Rule 702 has three major requirements: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.*, reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.*, fit].") (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (alterations in original)).

The party offering the expert testimony must prove each of these three requirements by a preponderance of the evidence. *CB Aviation, LLC v. Hawker Beechcraft Corp.*, No. 2:10-cv-1411-JD, 2011 U.S. Dist. LEXIS 128918, \*4 (E.D. Pa. Nov. 8, 2011) (citing *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)). As the Third Circuit has further explained, trial judges serve a gatekeeping function and must determine whether these requirements are satisfied before the proposed expert testimony is presented to the jury. See *Schiff*, 602 F.3d at 172 (citing *Pineda*, 520 F.3d at 243); see also *Houston v. Smith*, No. 3:2009-cv-190, 2010 U.S. Dist. LEXIS 118136, \*3 (W.D. Pa. Nov. 5, 2010).

In the instant motion for summary judgment, Defendants do not question Davison's qualifications, (see Doc. No. 29 at 17), nor have they raised a genuine challenge to the fit of the proposed testimony to the facts of the case, (see *supra*, n. 4). Instead, they limit their attack to the reliability of Davison's testimony due to the lack of methodology employed. (See Doc. No. 29 at 17). When evaluating the reliability of an expert's methodology, district courts should consider the following factors: (1) whether a method consists of a testable hypothesis; (2) whether the

method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Murray*, 311 F. App'x at 523-24 (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000)). This list of factors is "neither exhaustive nor applicable in every case." *Pineda*, 520 F.3d at 248 (quoting *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 806-07 (3d Cir. 1997)).

### 2. Davison's Methodology

In his first report, Davison states that "it appears at this time that the cause for this fire was a failed turbo charger." (Doc. No. 30 at 52). The report does not explain what, if any, methodology he employed to reach that conclusion or what facts support it; instead, he simply notes that it is based on his "initial and preliminary examination and a telephone interview with the operator of the vehicle[.]" (*Id.*). In his second report, Davison similarly states without explanation that an "examination of the turbo charger and the portion of the exhaust system which had been retained further supported my initial and preliminary findings of a turbo charger failure being the cause for this fire." (*Id.* at 55). This second report again makes no mention of methodology employed or factual support for his conclusion.

In the final report, Davison notes: (1) the existence of "punctures within the after turbo exhaust piping that protruded from the interior of the exhaust pipe through the exterior portion of the exhaust pipe"; and (2) "excessive wear and a disintegrating impeller wheel . . . [which] was caused by excessive wear within the turbo charger." (*Id.* at 59). He then opines that "[t]he deficiencies within the turbo charger can cause poor operation characteristics, overheating of the

10

turbo charger and exhaust system, and escaping exhaust gases. All or a combination of these could be the cause for this fire." (*Id.*). He again makes no mention of methodology employed to reach this conclusion, nor does he explain how the two engine "deficiencies" noted in this report support his conclusion. Moreover, Davison does not indicate that any tests were performed or reference materials cited to determine the extent to which the engine could overheat or the quantity of gas which could escape as a result of these "deficiencies," much less demonstrate that these deficiencies actually caused the fire.

Based on the record before it, the Court concludes that Plaintiff has failed to establish by a preponderance of the evidence that Davison's opinion is reliable. Davison makes no mention of the methodology he used to reach his conclusion as to the origin of the fire. Similarly, even when Defendants pressed the issue, Plaintiff failed to identify any methodology apart from simply stating that Davison conducted an "independent examination of the equipment in question." (See Doc. No. 31 at 9). Thus, with no proffered methodology, the Court has no way to evaluate: (1) whether the method consists of a testable hypothesis; (2) whether it has been subject to peer review; (3) its known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; or (7) the non-judicial uses to which the method has been put. See *Murray*, 311 F. App'x at 523-24.

Falling well short of the reliability requirement of Rule 702, Davison's reports amount to a series of unsubstantiated conclusory statements backed by no identifiable scientific methodology. In essence, neither Plaintiff nor Davison provide support for his conclusion apart from the fact that he himself said it. Such *ipse dixit* is insufficient to satisfy Rule 702. *Reger v. A.I. Dupont Hosp. for Children of the Nemours Found.*, 259 F. App'x 499, 500 (3d Cir. 2008)

11

(citing *Oddi*, 234 F.3d at 158). Therefore, this Court will exclude Davison's report as unreliable—a result consistent with decisions in this circuit. See e.g., *Williams v. United States*, 321 F. App'x 129, 132 (3d Cir. 2009) (upholding the exclusion of an expert's reports which: (1) were "replete with conclusory statements with no scientific method tying an alleged cause to an alleged defect"; and (2) lacked a discernible "testable hypothesis to support his opinions" and "standards governing [the expert]'s analysis"); *Scrofani, v. Stihl Inc.*, 44 F. App'x at 562 (upholding the exclusion of an expert's opinion that: (1) "employed absolutely no methodology at all"; (2) "merely set[] forth a series of unsubstantiated opinions" regarding a design defect; and (3) "gave no clue as to how [the expert] reached [his] bald conclusions" supporting the failure to warn claim) (internal quotation marks omitted); *Murray*, 311 F. App'x at 524 (upholding exclusion of expert testimony which "fail[ed] to demonstrate any methodology, let alone peer-reviewed or generally accepted methodology, underlying his opinion"); *Furlan v. Schindler Elevator Corp.*, No. 10-6870, 2012 U.S. Dist. LEXIS 44751, *15-17 (E.D. Pa. Mar. 29, 2012) (finding expert opinion unreliable where the expert: (1) "used little, if any methodology beyond his own intuition"; (2) conducted no tests; and (3) applied no standards apart from his own perception) (citations omitted).

Because the Court will exclude Davison's reports, Plaintiff has presented no expert testimony to support its claim that a defective engine and/or turbocharger caused the fire. Therefore, the Court must grant Defendants' motion for summary judgment.

###### C.    Sufficiency of Expert Testimony

Even if Davison's reports were not excluded, the Court would still grant summary judgment for Defendants. As discussed *supra*, Plaintiff failed to file a responsive CSMF, thus: (1) all the purportedly undisputed facts listed in Defendants' CSMF were deemed admitted; and

(2) no other allegedly material facts were presented for the Court's consideration.[7] Viewing the facts properly before the Court in the light most favorable to the non-moving party, Plaintiff has at most demonstrated that the turbocharger failed and caused the fire. That finding alone is insufficient to make out a *prima facie* case for Plaintiff's breach of warranty, negligence, and products liability claims.[8]

In its brief, Plaintiff makes the conclusory assertion that "with the resultant fire and property destruction, Defendants breached their warranty, whether it is express or implied, to Plaintiffs." (Doc. No. 31 at 14). Plaintiff, however, has offered no evidence to demonstrate the existence of an express warranty in the first place; therefore, Plaintiff's breach of express warranty claim cannot survive summary judgment. See *Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009) ("Because [plaintiff] offers insufficient evidence to prove the alleged express warranty, I grant summary judgment as to the claim of breach of an express warranty."); 13 PA. CONS. STAT. § 2313(a) (detailing the means by which express warranties may be created). Plaintiff's breach of warranty claims, both express and implied, are also barred by Pennsylvania's applicable four-year statute of limitations. 13 PA. CONS. STAT. § 2725. Plaintiff was required to file suit within four years of March 2, 2001, the date the seller tendered delivery of the goods, (see Doc. No. 30 at ¶ 4), even if the breach was not apparent until after delivery had been tendered. *Horsmon v. Zimmer Holdings, Inc.*, No. 11-1050, 2012 U.S. Dist. LEXIS 15650, *5 (W.D. Pa. Feb. 8, 2012) (quoting *Nationwide Ins. Co. v. Gen.*

---

[7] Throughout its brief, Plaintiff attempts to satisfy its burden of identifying genuine factual disputes by citing to—and reiterating the facts contained in—the complaint. (See Doc. No. 31). However, as Plaintiff also notes in its brief, citation to unsupported allegations contained in pleadings is insufficient to survive summary judgment. (See *id.* at 9-10) (citing *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654 (3d Cir. 1990); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)). To be clear, resting on the allegations contained in the complaint is simply not enough to survive summary judgment. See *Saldana*, 260 F.3d at 232.

[8] The Court must apply Pennsylvania substantive law in this diversity action. See *Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*, 742 F. Supp. 2d 709, 714 (W.D. Pa. 2010) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000)).

*Motors Corp./Chevrolet Motor Div.*, 625 A.2d 1172, 1174 (Pa. 1993)). Here, Plaintiff did not commence the instant action until June 26, 2009, (Doc. No. 30 at ¶ 11), which is over four years too late.

Plaintiff's strict products liability and negligence claims are deficient for failure to establish an essential element of both claims: that the product was defective. See *Warnick v. NMC-Wollard, Inc.*, 512 F. Supp. 2d 318, 322-23 (W.D. Pa. 2007). Plaintiff's only support for its claims is the failure of an engine with over 540,000 miles of use. But such failure does not demonstrate, *ispo facto*, that the product was defective. Whether this Court applies the Second or Third Restatement of Torts,[9] both require Plaintiff to prove that the product was defective at the time it left the hands of Defendants. *Lewis v. CRC Indus.*, 7 A.3d 841, 844 n.3 (Pa. Super. Ct. 2010) (applying Second Restatement) (citation omitted); Restatement (Third) of Torts (1998), § 2. Showing only that an engine "failed" after 540,000 miles is insufficient to establish this element.

Accordingly, even if Davison's expert testimony was not excluded, the Court would grant summary judgment for Defendants because: (1) Plaintiff failed to present evidence to satisfy the *prima facie* elements of its claims; and (2) the warranty claims are also time-barred.

## VI.    CONCLUSION

For the reasons stated above, Plaintiff has failed to support its claims with admissible expert testimony. Additionally, even if the Court admitted the proffered expert reports, the evidence Plaintiff has mustered fails to establish all of the elements of its strict products liability,

---

[9] There is presently a disagreement as to which Restatement governs strict liability actions in Pennsylvania. Compare *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 359 (3d Cir. Pa. 2011) (confirming that "federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts"), with *Schmidt v. Boardman Co.*, 11 A.3d 924, 941 (Pa. 2011) ("Notwithstanding the Third Circuit's prediction, however, the present status quo in Pennsylvania entails the continued application of Section 402A of the Restatement Second, subject to the admonition that there should be no further judicial expansions of its scope under current strict liability doctrine."), and *Wiggins v. Synthes (U.S.A.)*, 29 A.3d 9, 14 (Pa. Super. Ct. 2011) (applying section 402A of the Restatement (Second) of Torts)).

negligence, and breach of warranty claims. The warranty claims are also barred by Pennsylvania's applicable statute of limitations. Consequently, the Court will dismiss Plaintiff's claims and **GRANT** summary judgment for Defendants. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTFIELD INSURANCE, *a/k/a* WESTFIELD INSURANCE COMPANY, *as subrogee of* THP ENTERTAINMENT, INC., *t/d/b/a* RELIENT K, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO. 3:10-cv-100 JUDGE KIM R. GIBSON |
| DETROIT DIESEL CORPORATION, HONEYWELL INTERNATIONAL, INC., HONEYWELL TRANSPORTATION SYSTEMS, *and* HONEYWELL TURBO TECHNOLOGIES, ) ) ) ) ) | |
| Defendants. ) | |

### ORDER

**AND NOW**, this 8th day of May 2012, upon consideration of Defendants' Motion for

Summary Judgment (Doc. No. 26), and in accordance with the Memorandum, **IT IS HEREBY**

**ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment be entered in favor of Defendants and

against Plaintiff on all claims.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**